Please, the Court, Your Honor, Linda Fessler for the appellant. I'd like to reserve my time for rebuttal. If that's agreeable with the Court. Yeah, sure, okay. You just sat down, but you're up. Good morning. May it please the Court, my name is Barbara Racine and I represent the Secretary of Labor. At issue in this case is whether the Department correctly concluded that the confirmation order issued by the Bankruptcy Court discharged and released United from the Air 21 whistleblower claims of the complainants. The Secretary takes the position that these whistleblower... Talk a little louder. Pardon me? You have to speak a little louder. The Secretary takes the position that these whistleblower claims should be dismissed pursuant to the confirmation order issued by the Bankruptcy Court confirming the reorganization plan and discharging all current and potential claims against United. Each of the complainants, but in this case Hafer, he filed his Air 21 whistleblower complaint more than one year prior to United filing for Chapter 11 bankruptcy protection. The Bankruptcy Code, in conjunction with the explicit terms of the confirmation order, discharges each of the pre-petition claims of the complainant and enjoins each of them from pursuing their Air 21 complaints. Section 1141D1 discharges all debt arising before the date of the confirmation and Section 524A2 of the Bankruptcy Code permanently enjoins the complainant from continuing his action. Counsel, what I'm trying to figure out in this case is where sort of the beginning and the end boundaries of the governmental unit exception to the discharge rules, and that's frankly a bit of a mystery to me. As I understand it, Section 1988 damage attorney fees are dischargeable, they're not covered by the government unit exception to the discharge rule, is that correct? I believe so. The argument that the complainants make about the governmental unit is based on the automatic stay, but the automatic stay is no longer in effect. The confirmation order lifted the automatic stay. It's been replaced by the terms of the reorganization plan as stipulated by the confirmation order. But Section 523A7 exempts from the discharge provision any debts that are a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit. Is that section relevant or in play in this case? I would say not, no. Because the attorney's fees represent compensation to the whistleblower, they're not really penalties to the government. And that provision, I think a Section 1988 fee award is not considered to be a fine, penalty, or forfeiture payable to and for the benefit of a government unit, notwithstanding the widespread and deeply held government view in opposition to discrimination in this country, correct? That's correct. But Rule 11 sanctions are not dischargeable, is that correct? That's my understanding. But there's a distinction because these, first of all, this is not a procedure that the governmental unit, that would be an exception to the automatic stay, because the government, this is not a prosecution of a complaint by the agency. The agency's role in this proceedings, in this proceeding, is to merely be an impartial adjudicator. But isn't the argument being made that the whistleblower, in this case now Mr. Hafer is the only one who's left, that Mr. Hafer is really working much like an attorney general, a citizen attorney general, advancing the cause of government entities, and therefore, like the government entity, they are recovery is allowed by law to be immune from the discharge provisions of the bankruptcy code. I mean, isn't that part of the argument? Okay. Well, in this case, the governmental unit's enforcement action is no longer applicable because the automatic stay is no longer in effect. So in other words, once the automatic stay is removed, the exception for the government exercise of police and regulatory power is no longer in effect. There are only, the whistleblower claims are, that only has to do with the automatic stay provision. Once the discharge provisions go into effect, there no longer is the governmental unit exception. And in this case, the discharge provisions have gone into effect as stipulated by the confirmation order. In addition, the argument that the whistleblower claims are exempt from the discharge provisions to the bankruptcy statute to further the underlying purposes of AR-21 is also not valid. The only exception to the discharge provisions that Congress has enacted are listed in the statute. The two that apply to the corporate bankruptcy involve fraud regarding the debtor's financial condition and fraud to evade taxes. The complainants have not pointed to any provision placing the pre-petition whistleblower claims outside of the discharge order. They have pointed to nothing in the reorganization plan, nothing in the confirmation order, and nothing in the bankruptcy code itself. If you have no further questions, I would submit that the secretary respectfully requests that this court deny the petitions for review and affirm the ARB's final decision and order of dismissal. May it please the court, I'm Jeff Clark from Kirkland & Ellis on behalf of United Airlines. And let me start, actually, Judge Layton, with the two questions you posed. First the question about what about Section 1988 fees as compared to Rule 11 sanctions? And then also the kind of theory that's floated around some of the petitioner's briefs, including heifers of kind of being deputized with federal power, as it were. On the first question, the line between the, well, the first point, Your Honor, is that that exception to the discharge is not applicable because the government hasn't sought or obtained any penalty here. This has been sought purely by a private party. And second, the ALJ rejected the claim. It's not a private party acting as a role of an attorney general. Judge Pregerson, that goes to the second question, which is the one about this deputization theory. Respectfully, no court has ever accepted such a theory. In fact, it would play havoc with... Why? What's wrong with that theory? What's wrong with that theory is that the government is involved in many situations like this. For instance, Title VII. The EEOC can choose to bring claims, or alternatively, it can leave claims to private enforcement. This is a situation in which the government had the same choice under the Air 21 statute. It chose not to become involved and to bring an action. In order for the exception, which is only an exception to the state provision, not an exception to the discharge to apply, it has to be an action brought by the government. So if it were a Title VII action, if it were an action brought by the EEOC, then it would be subject to the exception from the automatic stay, which again is not applicable and is a moot claim. But if a private party brings an action merely before a government adjudicator... How long did it take United to go into bankruptcy after this whistleblower claim came to light? A period, I think, in excess of five years, Your Honor. United can just sit around and look around and see what's happening and file for bankruptcy and put everything on hold and then get it all discharged. Your Honor, I appreciate your concern about claims not taking too long to resolve, but there are procedural options that Mr. Hafer could have exercised and chose not to exercise. How far did the whistleblower suit proceed before the bankruptcy? This whistleblower suit proceeded first to an initial investigation by OSHA, which determined that the claim was without merit. Then it proceeded to a... A what? Claim was without merit, no merit. And then there was a next stage before an ALJ, which also concluded that the claim was without merit. And it's at that point that the stay provision was invoked. Your Honor, I was attempting to answer your question about delay. The period of delay, again, is something that could have been addressed by the exercise of some options that the petitioner had. The petitioner either could have sought from the bankruptcy court, which had appeared before for purposes of its proof of claims, relief from the stay. Didn't do that. The other thing under this court's precedence that the petitioner could have sought would have been an interlocutory appeal from the decision of the Department of Labor to abide by the stay. Didn't exercise that option. So the delay here is a delay that's traceable to the petitioner's failure to exercise those options. So returning to the question of the deputization theory, again, that's a theory that no court has ever adopted. The board thoroughly surveyed the law in this area in its stay decision, which is in the record. And it found only one case from the bankruptcy court in the District of New Jersey which had ever applied the stay exception in a situation where the government had not brought the action. Even that case that's called In re Briarcliff is a case that doesn't involve this deputization theory. So this deputization theory is really the first time that either the Department of Labor, certainly, or any bankrupt party would have seen such an argument. And again, it's an argument that fails here, particularly by virtue of the fact that there is an ability for the government in many of these kinds of labor law situations to bring its own enforcement action. For instance, NLRB cases are subject to the exception for the stay because the general counsel of the NLRB prosecutes those actions. But here, this is a situation where it's simply a private-to-private dispute which Congress has just simply chosen to submit to an administrative panel for review and determination with the ability to seek judicial review to the Court of Appeals. But it's not a case where the government is actually the enforcer. It has that option, but it chose not to exercise that option here. And the fact that it chose not to exercise that option is of pivotal significance as to whether that stay exception would apply. And again, that stay exception does not apply because, as Judge Layton was noting, the only exceptions that apply to discharge are the exceptions in the discharge provision. The exception that's being invoked is a different exception, an exception to the automatic stay provision. And that's now mooted by virtue of the fact that the automatic stay dissolved once the bankruptcy order was confirmed. So there are two other arguments, I think, that Petitioner Hafer has presented. One is that the claims are not established, that you need to have a claim that's been reduced to some form of judgment. And respectfully, Your Honors, that is in direct contravention of the definition of a claim, which says regardless of whether or not the claim essentially has become liquidated, it's still barred and discharged. And also, it doesn't matter whether the actions are, quote-unquote, disputed or undisputed. So they remain barred. We've talked about the argument about the exception applying. And then lastly, the claim of the petitioners is the ultimate fallback is if those exceptions, if the existing exceptions don't apply, and if the stay exception doesn't apply because that's become mooted, then the court should create its own new exception as a judicial matter to the dischargeability provisions. Do we have any cases from other circuits that create such an exception? No, Your Honor. I think the only thing I would point you to is that just this past term in the Supreme Court in a case involving the Travelers Insurance Company, the Supreme Court noted that a judicially created rule had been created to when attorney's fees were available under the bankruptcy code, the so-called Fobian rule. And the Supreme Court reversed that decision and held that there was no... Well, let me ask you this. The board held that Hafter, as a private individual, could not take advantage of the stay exception because the exception applied only if a government entity was the prosecuting party. That was the NLRB's position, all right? Now, here are some cases here. N. Ray McMullin, that extended the exception to private parties' claim against a debtor. N. Ray Berg, that extended the exception to private parties' claim for attorney's fees imposed against a debtor as a sanction for attorney misconduct. Another case, Alperin v. Leeb, extending exception to private parties' claim for monetary sanctions against a debtor's attorney. And then U.S. X-Rail Doe v. X-Inc. of the Eastern District of Virginia, extending the exception to private parties' False Claims Act claims. You acquainted with those cases? Not all of them, Your Honor, but they seem to fall into two categories. The first category were claims that involved some form of sanction, some kind of penalty. And we would concede that if there were a sanction or a penalty entered, that that would be subject to the exception to the automatic stay, but this isn't a situation... But they were looking for sanctions here, wasn't he, the whistleblower? A penalty? Your Honor, no. Respectfully, the relief sought here is all in the form of compensatory relief or remedial relief. It's not in the nature of sanctions. And then the other situation you mentioned was a situation that involved a False Claims Act, but actually there's significant authority for the proposition that key TAM actions do not fall within that exception. Again, it's a situation where the government has the same choice. If the key TAM relator is joined by the government, which the government has the power to do, then it will become a government enforcement action. But if the government chooses to sit on the sidelines and allow the key TAM relator to pursue what essentially is that person's own claim, of course it's largely held that to be barred. I agree with your position, I think, overall in this case. But I do think the Doe's case does stand for the proposition that a police or regulatory powers action seeking entry of a money judgment such as the instant key TAM suit is exempt from the automatic stay under the Section 362b-4. I think that may be an outlier, but I think that case does stand for the proposition that Judge Pregerson suggests. I'll perfectly well accept that, Judge Layton, and would argue that it was an outlier, just like the Briarcliff case that was an outlier in a situation where there were rent control board proceedings that were at issue, but proceedings that were implemented by a private party in which were not a government enforcement kind of situation. It comes back to the plain text. But we're a country that likes outliers, right? We like underdogs, Your Honor, I would agree. But I do think that the courts are constrained by the plain text of the provision, which I want to review again quickly. But again, this is also an issue that is not relevant for two reasons. One, because only the discharge exceptions apply here. This isn't a situation where you can review any exceptions to the state, because that issue was mooted. But looking at the plain text, the plain text very clearly says that they have to be actions, quote, to enforce such by, I'm sorry, they have to be actions by a governmental unit, not just actions before a governmental unit, and they have to be to enforce such governmental unit organizations, police, or regulatory powers. And again, that same phrase is repeated. So the lion's share of courts, with the exception of outliers, as much as Americans like outliers, Your Honor, are ones that have simply enforced the plain text of the provision, and that's what United will call for you here to do today. How, if at all, are Lawson and Davis situated differently than Haper? Well, as Your Honor knows, the Lawson case is settled. I've seen Mr. Silvern, who represented both parties, send in a letter representing that the Davis case is settled. Actually, just to make a correction to that, it's settled only in the sense that it's not being pursued, but basically Mr. Silvern and his client must have decided not to go forward with that appeal, but it's not the subject of a settlement agreement like the Lawson case. And so I would say, Your Honor, the first answer – But it's settled by just dropping it, is that what you're saying? Well, I can only – at some level that's a question for Mr. Silvern. I can tell you that there's no settlement agreement that I've seen, and certainly when I boarded the plane to come out here and then consulted with my clients afterwards, there appears to be no settlement agreement. I have an email message that indicates that Mr. Silvern called someone at United, not me, and indicated that basically he wanted to make sure that there was still in place a settlement for the Lawson case, which was confirmed and is true, but that the Davis case is one that he decided to voluntarily recede from. I didn't quite get that from the letter he sent in. I wouldn't have gotten that from the letter he sent in either, Your Honor, but we're not going to contest the fact that he regards it as having been settled. I guess it depends on what the meaning of the word settled is. Only a lawyer from Kirkland & Ellis in Washington, D.C. would say that. Yeah, on a United flight, huh? I'm sorry, what about a United flight, Your Honor? I think it was a bad joke. No, it wasn't intended to reference that, Your Honor. I took that after Judge Wardlaw made that response. No, I think that I wouldn't regard Mr. Silvern as having engaged in any impropriety. I think that he was just describing it in different terms than I would have used. All right, thank you. Thank you, Your Honor. To the Court, please. If we take the exceptions that counsels have raised with regard to the bankruptcy provisions, namely that there must be a showing of fraud by the debtors with regard to financial considerations or fraud with regard to taxes, if we were to accept those as the only two exceptions, then we're basically deciding that financial interests, fraud when it pertains to financial interests, are the only things that matter with regard to the bankruptcy court, that the bankruptcy court doesn't care about fraud with regard to mechanical repairs, with the safety of the flying public, or with regard to adequacy of such repairs. But the bankruptcy court, just because there aren't exceptions, doesn't mean that the bankruptcy court doesn't care about discrimination in America or isn't concerned about product liability generally. And all of those bodies of law have some curative societal benefit that is deemed to be part and parcel with the substantive law that gives someone a right for recompense if they're damaged or harmed. In this case, Mr. Hafer lost his job, he alleges, because he was a whistleblower. Are we going to accept the entire body of tort law from the bankruptcy court, fresh start jurisprudence, in order to make sure that the little guy doesn't get hurt? Well, Your Honor, there were plenty of little guys who did get hurt when United went into Chapter 11. But I think, not that my client is any better than any other little guys, but there is an overriding interest here. Air 21 was put into place to protect the flying public. And if we say, oh, well, Mr. Hafer is one of many little guys that got hurt by this Chapter 11, then we're completely discounting our interest in protecting the flying public. Because what person, what little guy in his right mind at United, or at American or wherever, would want to risk their career to report? But that's why I raised right off, right from the beginning, the issue of Section 1988. I can't think of any body of law that is more universally accepted and approved in this country than the concept, the concept that people ought not to be discriminated against in the workplace and elsewhere. And to suggest that Air 21 presents a higher moral claim to exceptionhood under either the stay or the discharge provisions, causes me pause when I know Section 1988 fees are not exempt. And that's why I want to know what the alpha and omega is for this exception, for government unit exception to either discharge or the stay, in order to know whether or not it can fairly fit within the definitions that Congress gave us to work with. You know, Your Honor, it may be a question of degree, the fact that, as the Court indicated, a lot of little people got hurt with United's Chapter 11. And certainly, if you took all those little people there to be on different issues, there would be a lot of little people involved. But in this particular case, we're talking about Air 21. It's one issue, and it's Mr. Hafer's issue, but it's one issue that has a far-reaching effect on a lot of little guys, namely the flying public. So I grant you, there are a lot of little guys who got hurt by United on maybe 100 or 150 or 2,000 issues. But this is a case where a lot of little guys could get hurt on one issue. And I think when you come to balance that out, there is an overriding interest in Air 21 being enforced, not just to be on the books and not just to provide lip service for the protection of the flying public. I think it's important that there be some consequence to violating the provisions of Air 21. And it's important not only for the little guy to know that he's protected, but that the flying public knows that they're protected and that every attempt is being made to take care of the guys who risk their jobs to report these violations. So I grant you, Your Honor, many, many little guys got hurt with this Chapter 11. But on this one issue, I doubt that there are more people affected than with this Air 21 issue. And it has far-reaching effects, Your Honor, because there's going to be other Chapter 11s in the future. There's going to be many other Uniteds, whether it's the flying public that's involved or some other protected section of the public that's involved. And unless we protect those people who report it, and unless we really care about the flying public, enough to say, well, listen, United, you got off the hook. The public had an interest in giving you a financial fresh start. But we also have to consider this. We also have to consider the public interest to fly safely in the skies and to hold your feet to the fire when it comes to safety. And as to whether or not you are honestly pursuing mechanical issues and other requirements in the manner that you're supposed to. And it's not happening. It's not happening, Your Honor, because there will be other, as I indicated, other Chapter 11s. There have been other airlines that have come out of Chapter 11. Delta has recently come out of Chapter 11. And I wonder how many whistleblowers were involved in those. I don't know. But I think this is an issue that will go on. There will always be little guys that get hurt by Chapter 11 on their sole individual issue. But as to Air 21, this is a major issue, one major issue that affects numerous, numerous people. And I think just as the public has a certain amount of interest in the survival of United Airlines, the public has an interest in their own survival at the hands of United Airlines. And for that reason, I think I would ask the Court to remand this matter. I think in a way, I personally think fraud with regard to the maintenance of planes is much more important than fraud with regard to taxes. And that's provided as an exception. Does it have any bearing to either your case or opposing counsel's case that according to opposing counsel, that there was no merit to Mr. Hafer's claims? Well, Your Honor, it wouldn't be the first time that at the first stages of these proceedings, it's found that there isn't any merit. My argument would be in addressing the Court's question that as it proceeded along, there could very well have been additional evidence come out through the due process system that's set up to not only change the decision, but also involve the Department of Labor, not the Department of Labor, I'm sorry, the regulatory agencies to pursue it along with Mr. Hafer. That's been known to happen. They can join in at the very last minute if something comes to light, a particular issue that they're interested in. And I know much has been made of the fact that Mr. Hafer was not joined in battle by the regulatory agency, and therefore he should not be considered as part of the system. But it seems to me the regulatory agency didn't really have a complete chance to decide somewhere down the line that they were going to join with Mr. Hafer. It's like saying, well, the preliminary decision was it didn't have merit. But we weren't allowed to pursue it after that. We weren't allowed to because first the stay and then the discharge. And that's what we're trying to rectify here. I would doubt very much, Your Honor, that any whistleblower actions are necessarily decided that first particular proceeding. And what we haven't had was the opportunity to follow through with this and to see if we can convince the regulatory agencies that, yes, this is something that they want to pursue with Mr. Hafer because it does have merit. And I'm not by that conceding that we need the regulatory agency to push forward in order to get this exception. Other than that, Your Honor, that's about all I can say. And I appreciate your time. Well, I appreciate your passion and your devotion. Well, thank you very much, sir. And your argument is standing up there and talking to us. Thanks very much. Thank you. Thank you. Citizen to citizen. Appreciate it very much. And have you ever heard of equity funding? Have you? Not sure what you're referring to, Your Honor. Have you? Have you? I have. She has. Good job. I'm afraid to raise my hand. Well, back in 1972 or 73, that was the largest corporate fraud perpetrated in the history of America. A $100, $400, $500, $600 million company, not one cent of which was honestly acquired. See? And I was the reorganization judge under the old Chapter 10 at O'Melveny and Myers where Judge Wardlaw was. For 16 years. 16 years, yeah. They were the attorneys for the trustee, Bob Leffler, who was an amazing person. And by the time this was all over with, everybody was taken care of. The little shareholders were taken care of. The working people were taken care of. The big banks were taken care of. It's hard to believe, huh? Go look at the Wall Street Journal and see how that came out. And you can also look at Fed Supp. We'll give you a whole history. A lot of graphics. I don't like to see the little person or the traveling public get beat up on these things, but maybe it's all stacked against them, particularly when it comes to whistleblowers. The United Way waited how many years? Three years before it went into reorganization. Is that what I heard? Your Honor, no. I was indicating from what period of this day it was in place on the actions, but during that time it was diligently pursuing actions before Judge Weedoff in the Bankruptcy Court. Before where? Judge Weedoff in the Bankruptcy Court. All right. It's a complex reorganization. Yeah, well, nothing's more complex than our immigration laws. So we can figure those out, hopefully. Try to do our best. Well, thank you very much. Thank you, Your Honor. Thank you. Thank you, and go thou and do no harm. That means we're adjourned? Yeah, we're adjourned. Yeah.
judges: Pregerson, Wardlaw, Leighton